### Lawrence Lamb, D.V.M. v. Lisa Geovjian, D.V.M.

[683 A.2d 731]

No. 95-510

Present: **Gibson, Dooley and Morse, JJ., and Peck, J. (Ret.), Specially Assigned**

Opinion Filed August 2, 1996

*Robert E. Manchester* of *Manchester Law Offices, P.C.*, Burlington, for Plaintiff-Appellant.

*Ritchie E. Berger* and *Sandra A. Strempel* of *Dinse, Erdmann, Knapp & McAndrew, P.C.*, Burlington, for Defendant-Appellee.

**Gibson, J.** Plaintiff Lawrence Lamb, D.V.M., appeals an order of the Washington Superior Court granting a motion in limine filed by defendant Lisa Geovjian, D.V.M., in plaintiff's action for intentional interference with contractual relations and prospective advantage. Among other claims, plaintiff contends that the superior court erred in giving preclusive effect to a stipulated settlement in an earlier State Veterinary Board proceeding. Because we hold that plaintiff is barred by res judicata from relitigating the merits of the charges in the earlier Board proceeding, we affirm without addressing plaintiff's other claims.

Plaintiff and defendant are both licensed veterinarians in the State of Vermont. In a complaint filed in superior court on November 14, 1988, and amended on August 27, 1991, plaintiff alleged that defendant, who was then a member of the State Veterinary Board, together with four other veterinarians[*] and the director of licensing and registration, negligently and intentionally defamed plaintiff and intentionally interfered with his contractual relations.

The substance of plaintiff's claims concerned actions taken by defendant in the course of investigating and resolving complaints that plaintiff had engaged in unprofessional conduct. Defendant was the Board member designated to conduct the preliminary investigation of the complaints. In that capacity, defendant recommended to the Board that several of the complaints be dismissed and that the remaining complaints be investigated further, and the Board so ordered. As a committee of the whole, defendant and the other Board members then further investigated the remaining complaints and determined that charges of unprofessional conduct should be brought

---

[*]The four other veterinarians reached settlements with plaintiff in 1992 and are no longer part of the case.

against plaintiff. The Attorney General, on behalf of the Board, filed a Notice of Charges with the Appeals Panel of the Office of the Secretary of State.

On October 28, 1988, prior to a contested hearing on the Board's complaint, plaintiff and the Board reached a stipulated settlement of the Board's charges. The stipulation, after noting that plaintiff continued to deny the charges against him and that the matter continued to be a disputed case, stated:

> The parties are prepared to proceed to litigate all aspects of the case, but prefer to resolve their differences by way of this stipulation and in such a manner as to ensure a fair compromise between their respective contentions thus eliminating substantial expense, time and inconvenience which will necessarily result from the continuance of this litigation.

The parties further stipulated that:

> 2. The agreement to this Stipulation by Lawrence Lamb, D.V.M. does not constitute or imply an admission to these charges. However, Lawrence Lamb, D.V.M., strictly for and limited to the purposes of this proceeding, does not contest the allegations in the Notice of Charges in this matter and the State agrees to resolve this matter by way of this Stipulation.

Under the terms of the settlement, plaintiff continued to practice veterinary medicine, subject to conditions that he complete certain training programs and that he comply with certain monitoring and reporting requirements. Plaintiff's failure to comply with any provision of the stipulation would result in a finding of unprofessional conduct on the part of plaintiff.

In his amended complaint in superior court, plaintiff alleged that defendant had defamed "plaintiff's personal and professional reputation by encouraging, assisting and implementing [sic] members of the public to obtain other members of the public to file complaints against the plaintiff with the State Veterinary Board." Plaintiff further alleged that defendant, through her statements, had intentionally interfered with plaintiff's contractual relations and prospective advantage.

According to plaintiff's deposition testimony, defendant's wrongful statements fall into two categories: those made prior to the Board's decision to bring formal charges to the Appeals Panel, and those

made after plaintiff filed his initial complaint in superior court. The latter category consisted of statements defendant allegedly made to veterinarians who were considering purchasing plaintiff's X-ray equipment. Defendant allegedly told the prospective purchasers that she did not think the X-ray equipment was worth buying, and that she believed plaintiff was "nuts" for bringing a lawsuit.

Defendant and the director of licensing and registration moved separately for summary judgment. In an order filed on June 11, 1992, the superior court granted summary judgment on all counts in favor of the director of licensing and registration.

With respect to defendant's motion for summary judgment, the court held that defendant was entitled to immunity to the extent she was acting within the scope of her position as a member of the Board. The court, however, denied the motion for summary judgment "to the extent that defamatory comments may have been made outside the scope of her state position, and on the issue of interference with contractual relations/prospective advantage." Specifically, the court found that a question of fact remained concerning defendant's statement about "the quality of plaintiff's x-rays." As for the statement that plaintiff was "nuts," the court held that "the remark could not reasonably have been taken in its literal sense," and thus could not support a defamation action as a matter of law. With respect to the claim of intentional interference with contractual relations and prospective advantage, the court concluded that questions of fact remained concerning defendant's statement about plaintiff's X-ray equipment, "along with the allegation that defendant encouraged others to complain about plaintiff."

Plaintiff took no appeal from the June 11, 1992 order. Defendant, however, moved for reconsideration, which was denied by the superior court. This Court dismissed defendant's collateral appeal. *Lamb v. Bloom*, 159 Vt. 633, 635, 622 A.2d 505, 507 (1993) (mem.).

On March 9, 1993, defendant moved in limine to prohibit plaintiff from introducing evidence pertaining to the merits of the charges of unprofessional conduct previously brought by the Attorney General against plaintiff. In an order filed June 12, 1995, the superior court granted defendant's motion and barred plaintiff

> from introducing evidence (1) seeking to challenge the acts/omissions set out in the Attorney General's "Notice of Charges" and (2) to establish that defendant should not have recommended to the Attorney General that the "Notice of

Charges" be brought, because such evidence is not relevant to the substantive remaining counts.

In a motion to amend the June 12 order, plaintiff argued that the order in limine effectively terminated his intentional interference claim and thus constituted a final, appealable order. Defendant opposed the motion. In a stipulation filed on July 18, 1995, plaintiff agreed to withdraw his motion to amend, and to refrain from filing an appeal from the June 12 order until his defamation claims were resolved. In a stipulation filed on September 12, 1995, plaintiff agreed to dismiss his defamation claims with prejudice, but without prejudice to his right to appeal the June 12 order, which the parties agreed was a final order with respect to the intentional interference claim. The present appeal followed.

Despite the protracted proceedings in the trial court, the parties present a narrow issue on appeal: whether the superior court erred in giving preclusive effect, in plaintiff's intentional interference action, to plaintiff's stipulated settlement of the charges brought by the State Veterinary Board. The parties agree that, if there was no error, the order granting defendant's motion in limine resolves plaintiff's intentional interference claim in favor of defendant.

A trial court has broad discretion in its pretrial evidentiary rulings. *Ball v. Melsur Corp.*, 161 Vt. 35, 42, 633 A.2d 705, 711 (1993). We will affirm its rulings absent a showing that the court has withheld or abused its discretion on clearly untenable or unreasonable grounds. *State v. Powers*, 163 Vt. 98, 100, 655 A.2d 712, 713 (1994); *State v. Cohen*, 157 Vt. 654, 655 n.*, 599 A.2d 330, 331 n.* (1991) (mem.).

Plaintiff contends that, because the parties in the earlier proceeding stipulated to settlement without an evidentiary hearing and with the express intent to resolve the matter "strictly for and limited to the purposes of this proceeding," the issues were not actually litigated in the earlier proceeding and so cannot be given preclusive effect in the later proceeding. Defendant argues that plaintiff had a full and fair opportunity to litigate the Board's charges in the earlier proceeding, but chose not to contest those charges, choosing instead to resolve them by stipulation; consequently, plaintiff's attempt to relitigate the merits of those charges is res judicata in the present matter.

Res judicata "bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the 'parties, subject matter and causes of action are identical or substantially identical.'"

*Berlin Convalescent Ctr., Inc. v. Stoneman,* 159 Vt. 53, 56, 615 A.2d 141, 143 (1992) (quoting *Berisha v. Hardy,* 144 Vt. 136, 138, 474 A.2d 90, 91 (1984)). The doctrine does not require that claims must have been actually litigated in an earlier proceeding; rather, res judicata "bars parties from litigating claims or causes of action that were or should have been raised in previous litigation." *Merrilees v. Treasurer,* 159 Vt. 623, 624, 618 A.2d 1314, 1316 (1992) (mem.). The instant matter satisfies the elements of res judicata.

We turn first to the identity of parties, subject matter, and causes of action. Identity of parties exists where the parties or their privies are involved in both actions. *Department of Human Servs. v. Comeau,* 663 A.2d 46, 48 (Me. 1995). "A privity relationship generally involves a party so identified in interest with the other party that they represent one single legal right." *Id.*; see *First Wisconsin Mortgage Trust v. Wyman's, Inc.,* 139 Vt. 350, 358-59, 428 A.2d 1119, 1124 (1981) (for purposes of res judicata, test for privity is whether parties have really and substantially same interest in successive proceedings).

Plaintiff in this matter was the defendant in the earlier proceeding. Defendant, however, was a party to the first proceeding in her official capacity as a member of the Board, but is a party in this matter in her individual capacity. Generally, an action brought against an individual in one capacity is not a bar in a second action against the same individual acting in a different capacity. *Brown v. Osier,* 628 A.2d 125, 128 (Me. 1993). Moreover, a public official sued in her individual capacity is generally not considered to be in privity with the government for the purpose of res judicata. *Id.* Nevertheless, when a party is sued as an individual for actions taken solely in her official role, res judicata may not be circumvented. *Id.* at 129; see *Cohen v. Shea,* 788 F. Supp. 66, 68 (D. Mass. 1992) (res judicata bars second suit against individuals for actions taken solely in their official roles).

The court's order granting defendant's motion in limine specifically bars plaintiff from introducing evidence to establish that defendant should not have recommended that the Attorney General file the notice of charges with the Appeals Panel, or to relitigate the substantive charges filed by the Attorney General with the Appeals Panel. The evidence barred by the superior court plainly implicates actions taken by defendant solely in her official capacity as an investigator for and member of the State Veterinary Board. Plaintiff may not circumvent res judicata through his lawsuit against defendant individually.

The element of identity of causes of action, for res judicata purposes, applies to affirmative defenses. Thus, "[t]he doctrine specifically bars defendants from using defenses available in one action as the basis for a claim in a later action." *Merrilees*, 159 Vt. at 624, 618 A.2d at 1316. In this matter, plaintiff seeks to litigate a claim that could have been raised as an affirmative defense in the earlier administrative proceeding. See *Gilbert v. Board of Medical Examiners*, 745 P.2d 617, 622 (Ariz. Ct. App. 1987) (conspiracy and contractual interference claims against members of medical conduct board raised issue of irregularity of medical misconduct proceedings that could have been raised during those proceedings). The superior court properly barred him from so doing.

With respect to the existence of a final judgment in a former litigation, this case involves an administrative order entered pursuant to a stipulated settlement. As we have recognized, res judicata "applies to administrative decisions '[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'" *Delozier v. State*, 160 Vt. 426, 429, 631 A.2d 228, 230 (1993) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)); see *Hawkins v. Department of Economic Sec.*, 900 P.2d 1236, 1240 (Ariz. Ct. App. 1995) (failure to appeal final administrative decision renders that decision res judicata). "[A]dministrative adjudicative decisions have res judicata effect only where 'the proceeding resulting in the determination entailed the essential elements of adjudication.'" *Delozier*, 160 Vt. at 429, 631 A.2d at 230 (quoting Restatement (Second) of Judgments § 83 (1982)). An administrative enforcement action becomes an adjudicatory proceeding when a matter proceeds to the prosecutorial stage through the filing of a charge. *Id.* at 430, 631 A.2d at 230. In this matter, the Board determined that charges of unprofessional conduct should be brought against plaintiff, and referred the matter to the Attorney General, who drafted and filed a complaint with the Appeals Panel. The former litigation thus entailed the essential elements of adjudication.

Plaintiff contends, however, that a stipulated settlement cannot be given the preclusive effect of a final judgment. He directs our attention to Restatement (Second) of Judgments § 27 cmt. e (1982), which provides that "[a] stipulation may . . . be binding in a subsequent action between the parties if the parties have manifested an intention to that effect." According to plaintiff, the language of the stipulated settlement asserting plaintiff's continued denial of the

allegations in the Notice of Charges, and stating the parties' settlement of those allegations "strictly for and limited to the purposes of this proceeding," manifests the parties' intent not to be bound by the stipulation in subsequent actions.

Section 27 of the Restatement applies to the doctrine of collateral estoppel, rather than to res judicata. The Restatement, however, appears to make the rules of collateral estoppel applicable to res judicata. See Restatement (Second) of Judgments § 83 cmt. f (1982) ("The rules of res judicata . . . include . . . the rules of issue preclusion and the qualifications and exceptions thereto stated in §§ 27-28."). Because the comment concerning the parties' intention arises in a discussion of "issues actually litigated," we are disinclined to apply a strict reading of § 27 cmt. e in the context of res judicata. Cf. *Merrilees*, 159 Vt. at 624, 618 A.2d at 1316 (res judicata not restricted to issues actually litigated in former proceeding).

Nevertheless, even if we assume that a stipulated settlement is binding only if it manifests the intention of the parties to be so bound, we have little trouble concluding that the stipulation in this case manifests the requisite intention. The parties expressly stipulated that they were "prepared to proceed to litigate *all aspects of the case,* but prefer to resolve their differences by way of this stipulation" so as to avoid the "substantial expense, time and inconvenience which will necessarily result from the continuance of this litigation." (Emphasis added.) Plaintiff cannot now assert that he was foreclosed from raising his claims in the earlier proceeding. The doctrine of res judicata, which is properly applied in this case, precludes relitigation of those claims. The superior court did not abuse its discretion in granting defendant's motion in limine.

"The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 401 (1981). The public interest in repose and finality is particularly acute in situations such as the present matter, in which an unsuccessful defendant in a professional-misconduct case, after stipulating to a settlement of the charges, attempts to relitigate the charges in a collateral attack against the public officials who investigated and preferred the charges. Defendant has now spent nearly eight years litigating allegations arising from her duties as a public official. Protracted litigation such as this, together with the threat of liability resulting therefrom, ill serves efforts to encourage citizen participation in public service. Public policy dictates that there be an end to this litigation. See *id.*

*Affirmed; remanded to the superior court with instructions to enter judgment in favor of defendant on Count III of the amended complaint.*