*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-255

JANUARY TERM, 2016

| | | |
|---|---|---|
| Lisa Mangini | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Windsor Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| Richard Hardie | } | DOCKET NO. 67-2-08 Wrdm |

Trial Judge: William D. Cohen

In the above-entitled cause, the Clerk will enter:

Husband in this divorce proceeding appeals from a family court order dividing the marital estate following a remand from this Court. He contends the trial court erred in: (1) denying his motion to dismiss the divorce complaint for failure to meet the six-month residency requirement; (2) ordering husband to pay any deficiency judgment resulting from a sale of certain real property; (3) awarding wife twenty percent of the marital estate; and (4) awarding wife any funds remaining in husband's retirement accounts. We affirm.

This is the second appeal to reach the Court in this divorce proceeding, and the third arising from the litigation as a whole. As summarized in the first divorce appeal, the material facts are as follows. The parties were married in 2002, when both were in their forties. They separated in 2007, when wife moved from the marital home in New Jersey to what had served as the parties' vacation home in Weathersfield, Vermont. Mangini v. Hardie, No. 2012-362, 2014 WL 3709678, at *1 (Vt. April 1, 2014) (unpub. mem.) (Mangini I).

Wife filed a complaint for divorce in the superior court in February 2008. The trial court denied husband's subsequent motion to dismiss, the case proceeded to trial, and the court issued final divorce judgment in July 2011. The court awarded wife maintenance arrears based on a temporary order but declined to award ongoing maintenance beyond June 2011; awarded wife the Weathersfield property together with all debts and encumbrances on the property, which included a 2008 mortgage transacted by husband without wife's participation; and awarded husband the marital home and several other properties, as well as his retirements accounts. Id. In a subsequent post-judgment order, the court explained that, in awarding the Weathersfield property to wife, it was aware of a pending foreclosure action by Brattleboro Savings and Loan and of the trial court's ruling in that matter that wife held a homestead interest in the property making the mortgage inoperable against her interest. Id. at *2. That ruling was the subject of a separate appeal to this Court.

Wife appealed from the divorce judgment, claiming that the trial court erred by inequitably dividing the marital property, declining to award maintenance, and failing to make adequate findings to support its decision. In March 2014, this Court reversed the judgment in the

foreclosure proceeding, holding that wife did not hold a valid homestead interest in the property. Brattleboro Savings & Loan Ass'n v. Hardie, 2014 VT 26, 196 Vt. 144. Shortly thereafter, we also reversed the divorce judgment "not only because of [the trial courts'] failure to explain a highly unequal distribution of marital property but also to take account of this Court's recent decision concluding that wife cannot avoid the 2008 mortgage based on her claimed homestead exemption." Mangini I, 2014 WL 3709678, at *2. As we explained, it appeared that the trial court assumed that wife would obtain the Weathersfield property free and clear of the 2008 mortgage, and we remanded to allow the court to reconsider the property division and maintenance issues. Id. at * 3.

Following our remand, the court held an evidentiary hearing in October 2014, in which only wife testified, the parties submitted proposed findings, and the court issued a written ruling in May 2015. In its decision, the court analyzed the record in light of each of the twelve statutory factors under 15 V.S.A. § 751(a), and concluded that they weighed heavily in favor of husband, particularly in view of the facts that the marriage was of short duration, income and assets were all largely provided by husband, wife had a profession but chose not to work, and wife "had the good fortune to have considerable and reliable family resources at her disposal."

The court found that the marital estate, excluding personal property and retirement accounts, had a net value of $793,090 and awarded wife twenty percent of the value by granting her the Weathersfield property, with a net value of $103,000, together with $60,000 in liquidated assets. The court also ordered that husband be responsible for any deficiency in the event of a foreclosure sale of the Weathersfield property. As to husband's retirement accounts, the court found that the evidence of their value was "conflicting and inadequate"; it would credit husband's most recent claim that they were completely depleted as of the time of the March 2011 final hearing, but would award wife any remaining assets in the accounts as of its initial final order of May 20, 2011, as well as assets previously in the accounts but not yet spent on the date of the court's 2011 oral ruling, because husband "should bear the cost of any failure to elucidate his assets." The court denied husband's subsequent motion to amend the judgment. This appeal by husband followed.

Husband first asserts that the trial court erred in denying his motion to dismiss the divorce complaint. As noted, wife filed her complaint in superior court in February 2008. Husband moved to dismiss the complaint the following month, alleging that he and wife had continued to reside together in New Jersey at all times prior to the filing of the complaint, and therefore that wife failed to meet the six-month residency requirement. See 15 V.S.A. § 592(a) ("A complaint for divorce or annulment of civil marriage may be brought if either party to the marriage has resided within the State for a period of six months or more."). The trial court held an evidentiary hearing on the motion in August 2008 and issued a written decision later that month. Based on extensive factual findings, the court concluded that wife satisfied the residency standard and therefore denied the motion.

Husband did not move for permission to take an interlocutory appeal of the court's ruling, and the case proceeded to trial. At the conclusion of the hearing, the court entered findings and conclusions on the record and issued a final judgment in July 2011. As noted, wife appealed from the judgment, which ultimately resulted in a reversal and remand, but husband did not file a cross-appeal challenging the trial court's denial of his motion to dismiss.

It is readily apparent from the foregoing that the trial court's ruling on the motion to dismiss is banned by issue preclusion and may not be collaterally attacked in this second appeal. The parties were the same, they had ample opportunity to litigate the issue, the court issued a decision on the merits, and husband did not appeal the ruling, which therefore became final and binding. See Lamb v. Geovjian, 165 Vt. 375, 379 (1996) (preclusion "bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter and causes of action are identical or substantially identical." (quotation omitted)). The fact that this Court later reversed the property award and remanded for further findings and conclusions on that issue did not reopen the question of the court's jurisdiction under § 592. See Havill v. Woodstock Soapstone Co., 2007 VT 17, ¶ 10, 181 Vt. 577 (mem.) (remand is limited to issues set forth in mandate, and does not authorize general reopening of other issues). Nor does the fact that the issue involves a question of subject-matter jurisdiction mean that the matter may be endlessly re-litigated following a final decision on the merits, as husband suggests. See In re B.C., 169 Vt. 1, 8 (1999) ("Unless a court has usurped power not accorded to it, its exercise of subject matter jurisdiction is binding in subsequent proceedings as long as the jurisdictional question was litigated and decided or the parties had an opportunity to contest subject matter jurisdiction."); see also Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites de Guinee, 456 U.S. 694, 702 n. 9 (1982) ("A party that has had an opportunity to litigate the question of subject matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment."); Delozier v. State, 160 Vt. 426, 429 (1993) ("Res judicata will apply to dismissals for lack of jurisdiction."); see generally 11 C.Wright, et al., Federal Practice & Procedure § 2862, at 446-47 (2012) ("[A] court's determination that it has jurisdiction of the subject matter is binding on that issue, if the jurisdictional question actually was litigated and decided, or if a party had an opportunity to contest subject-matter jurisdiction and failed to do so." ). Accordingly, we find no basis to address, much less disturb, the trial court's ruling on the dismissal motion.

Husband next challenges three provisions of the revised property division. Our review is limited. "Section 751 of Title 15 gives the court the authority to equitably divide marital assets after considering all relevant factors, including those listed therein." Molleur v. Molleur, 2012 VT 16, ¶ 15, 191 Vt. 202. As we have explained, "property division is not an exact science, and the trial court has broad discretion in considering the statutory factors and fashioning an appropriate order." Cabot v. Cabot, 166 Vt. 485, 500 (1997). Thus, we will not re-weigh the evidence or second-guess the trial court's decision so long as it provides a "clear statement as to what was decided and why" and there is a reasonable basis to support it. Molleur, 2012 VT 16, ¶ 15 (citation omitted); see also Bell v. Bell, 162 Vt. 192, 197-98 (1994) ("The court has considerable discretion in ruling on these matters, and the party seeking to overturn a property and maintenance award must show that there is no reasonable basis to support it.").

Husband asserts that the trial court erred in ordering him to pay any deficiency judgment resulting from the foreclosure sale of the Weathersfield property.[1] The court explained its ruling in this regard as follows:

---

[1] Husband states that wife subsequently purchased the Weathersfield properties at a foreclosure sale, resulting in a deficiency judgment of about $169,000. Husband has included a copy of the deficiency judgment in his printed case, although it was not before the trial court or part of the appellate record, and husband has not requested that that we take judicial notice of it. In any event, we do not view the occurrence of the sale or the amount of the deficiency judgment

3

> Although the Weathersfield properties are hereby ordered to be assigned to [wife] subject to the mortgages, the court finds it most equitable that [husband] bear a portion of the burden he unilaterally created by defaulting on the house payments. Should foreclosure result in a sale of the house property, [husband] is ordered responsible for any deficiency.

Husband argues that the provision was inconsistent with the provisions of the 2011 order and constituted an abuse of discretion, as it allowed wife to enjoy the benefits of living in the property while assuming none of the financial burdens. With respect to the comparison to the 2011 order, this Court reversed and remanded that order in light of the result of the homestead litigation, and the trial court was free to reevaluate the equities of the parties with respect to the property distribution. In general, husband's claim of error is essentially an argument to re-weigh the equities in husband's favor, an undertaking this Court does not assume on appeal. The trial court provided a clear statement and explanation of its ruling, and husband has not shown that it lacked any "reasonable basis to support it." Bell, 162 Vt. at 198 (19994). Accordingly, we find no basis to disturb the ruling.[2]

Husband next claims that the erred in awarding wife twenty percent of the value of the marital assets despite finding that only one of the twelve pertinent statutory factors favored wife. As noted earlier, however, the division of marital property is not an exact science, and the trial court enjoys broad discretion in determining the weight to be accorded the pertinent factors. Cabot, 166 Vt. at 500; Jakab v. Jakab, 163 Vt. 575, 585 (1995). Although the trial court found that the relevant statutory factors weighed heavily in favor of husband, it also noted that each spouse had contributed to the value of the estate, although husband's contribution was greater; recognized wife's contributions during the marriage as a homemaker; and found that the respective merits "weigh[ed] solidly in favor of [wife.]." The court's award of the vast majority of the assets to husband, as reflected in its eighty-twenty division of the estate, reasonably mirrored its findings and conclusions. While quarreling with the precise division, and in particular with the award to wife of $60,000 in liquidated assets, husband has not shown that it lacked any reasonable basis. Accordingly, there is no basis to disturb it.

Finally, husband contends the court erred in awarding wife whatever assets might remain in his retirement accounts. The order was based on the court's finding that it could not determine the precise value of the retirement accounts due to the "conflicting and inadequate" evidence provided by husband, that it would therefore credit husband's last representation in his reply to wife's proposed findings that there "[t]here were no funds left" in the accounts at the time of the divorce hearing, and that that husband "should bear the costs of any failure to elucidate his assets." Therefore, as a "risk allocation precaution," the court awarded wife any remaining assets in the accounts.

---

as material to whether the court abused its discretion in concluding that, as a matter of fairness, any deficiency judgment from a foreclosure sale should be husband's responsibility.

[2] Husband suggests that the foreclosure sale price, which he characterizes as a "bargain," was inappropriate, but the argument is not developed, and there is nothing in the appellate record to support the claim.

Husband contends that, in fact, approximately $172,000 remained in the accounts, and that the award improperly allowed wife to obtain more than twenty percent of the marital estate. As the court observed, however, husband was in the best position to provide clear and accurate evidence of the assets remaining in his retirement accounts and had represented that the accounts were depleted of funds. In these circumstances, we find no error in the court's decision to place any risk of error on husband.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Beth Robinson, Associate Justice