Filed 12/24/25

VERMONT SUPERIOR COURT

Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-03963

Crestmark Inc. v. Thomas Tuliper et al

### Decision on Defendant's Motions to Dismiss and To Strike and Plaintiff's Motion to Amend

The motions by Defendant Debra Gvoth,[1] for dismissal and to strike, are both DENIED. The motion by Plaintiff to file an amended complaint is GRANTED.

In Count I of this action, Plaintiff-Landlord Crestmark brings a claim against Defendant-Tenants Thomas Tuliper and others (including Ms. Gvoth) for a justice ejectment, stemming from nonpayment of rent. Such a claim is for possession of residential premises that had been leased by written agreement, and it lies against a tenant who refuses to vacate the premises after the agreement has been terminated. Defendant's Rule 12(b)(6) motion seeks dismissal on grounds that Plaintiff's notice to terminate, which by statute is required to be given to the tenant to properly terminate a residential leasehold, was defective and without terminative effect.

The supposed defects in Plaintiff's notice relate to the tenant's so-called "right to cure." That right, which is expressly afforded under 9 V.S.A. § 4467(a), is this: so long as the tenant pays all rents that are due and owing through the date of the rental period in which the payment is made, the payment cures the tenant's breach and prevents the tenancy from terminating. Interestingly, the statute does not actually require a landlord's notice of termination to provide the tenant with *any* statement or information as to the specific amount needed to cure. *See Barnet Tradepost, LLC v. Alden*, Docket No. 22-CV-02437, 2022 WL 19002742, at *2 (Vt. Super. Ct. Nov. 9, 2022). The landlord simply needs to inform the tenant of the reason for which termination is sought. However, if a landlord opts to use the notice to give the tenant information as to the amount needed to cure, the landlord must do so accurately. *See id.* (holding that, under the principles set forth in *Andrus v. Dunbar*, 2005 VT 48, ¶ 13, 178 Vt. 554 (mem.), "less" information in the notice regarding the cure amount "is likely more" effective than a notice that creates confusion by misrepresenting the amount). A tenant cannot be left confused, due to the landlord's misstatement in the notice, as to the actual amount that must be tendered by the tenant in order to cure the default or breach. *Andrus*, 2005 VT 48, ¶ 13

Here, Defendant argues that Plaintiff's notice was defective and without effect because it overstated the amount of unpaid rents owed by Defendant. Yet, the notice served by Plaintiff on

---

[1] There are multiple Defendants in this action, but Ms. Gvoth is the only Defendant moving for relief at this time, so the Court will hereinafter refer to her as "the Defendant."

the Defendant does not appear to be a "confusing" overstatement of the amount of unpaid rent due and owing. The notice, dated August 14, 2025, states that Defendant owes rent "for the months of August, September, October, November, [and] December 2024, [and for] January, February, March, April, May, June, July, and August [of] 2025." Pl.'s Ex. B. The notice states that "you owe $6,700" for the months listed, and that "you may redeem your tenancy under [9 V.S.A.] Section 4467(a)] by paying the total of $6,700.00 on or before **September 3, 2025**." *Id.* Plaintiff's Complaint for ejectment, which this Court accepts as true for purposes of Rule 12(b)(6) motion to dismiss, alleges that $6,700.00 is indeed the amount due and owing for the listed months. *See* Compl. at ¶ 9 (explaining that monthly rent due and unpaid for August 2024 through January 2025 was $490.00 per month, and that $540.00 per month was due and was unpaid for February to August of 2025). Plaintiff's math and its statements check out, and Defendant does not challenge the accuracy of the Plaintiff's notice in those respects or for those reasons.

Instead, Defendant presents a novel argument as to why Plaintiff's notice to terminate was in error. She argues that Plaintiff is precluded by law from asserting claims against Defendant for rents that were due for the months of August through December of 2024. The law on which she relies is a doctrine known as res judicata, or claim preclusion. That doctrine bars a party from again litigating claims that were already fully litigated, or which could have been so litigated, in another, earlier lawsuit between the same or substantially similar parties that was concluded by a "final judgment on the merits." *See Kneebinding, Inc. v. Howell*, 2020 VT 99, ¶¶ 38-40, 213 Vt. 598 (explaining claim preclusion doctrine); *Lamb v. Geovjian*, 165 Vt. 375, 379-80 (1996).[2]

Claim preclusion is recognized as an affirmative defense, *see* V.R.C.P. 8(c), which means that a defendant who asserts it has the burden of proving its essential elements. Defendant here maintains that the elements are met. For example, relying on judicial notice,[3] Defendant observes that in Docket No. 25-CV-1081, Plaintiff sued Defendant for justice ejectment, based on an allegation that Defendant had failed to pay rent for August through December of 2024. Defendant further observes that on July 30, 2025, the Court in Docket No. 25-CV-1081 granted Defendant's motion to dismiss, due to Plaintiff's failure to properly serve a notice of termination on Defendant. Defendant asserts that, because Plaintiff's ejectment action was dismissed without an express statement from the Court indicating that the dismissal was *without* prejudice, the dismissal is deemed a dismissal *with* prejudice. This distinction is important, since, as Defendant argues, a dismissal with prejudice is generally one that may be given preclusive effect—*i.e.*, it may count as a "final judgment

---

[2] As Plaintiff observes in its opposition, Defendant's motion leaves some confusion as to whether the doctrine being asserted Defendant is claim preclusion (res judicata), or, alternatively, issue preclusion (collateral estoppel). While the motion refers to "issue preclusion" frequently, and cites the legal standard for that doctrine, it also states that "res judicata" applies and bars Plaintiff's claims. This Court does not see that any issues were actually decided or resolved by any final judgment entered in the former litigation. There certainly was no finding or conclusion by the former court, in its order granting dismissal, that Defendant no longer owed rent for August to December of 2024. Accordingly, the doctrine that would appear to apply here, if any, is claim preclusion, not issue preclusion, and therefore the Court will treat Defendant as asserting claim preclusion.

[3] Paragraphs 1-6 of the Factual Background of Defendant's motion are allegations of fact related to prior litigation between the parties. These alleged facts are material to Defendant's motion and they do not appear on the face of Plaintiff's Complaint in this case. As such, they are generally not a permissible basis on which to grant dismissal for failure to state a claim. The Court infers Defendant to be requesting that the Court review its prior case docket and, by way of judicial notice, deem these new allegations to be truthful and accurate. Plaintiff does not address this issue it its opposition. The Court will assume, without deciding, that the allegations relating to the former litigation are true and accurate, for purposes of deciding this motion.

on the merits" for purposes of the doctrine of claim preclusion or res judicata. *See Cenlar FSB v. Malenfant*, 2016 VT 93, ¶ 20, 203 Vt. 23. By contrast, dismissals of claims that are made without prejudice are not deemed or considered by courts to have preclusive effect on subsequent claims or litigation.

In conclusion, therefore, Defendant's argument is that, due to claim preclusion, Plaintiff in this action had no right to seek recovery of rent for the months of August to December of 2024, and no right to seek ejectment based on Defendant's nonpayment of rent for those months. Defendant then applies that legal conclusion as a "sword," to affirmatively challenge the accuracy of the statements in Plaintiff's notice to terminate as to the amount needed to cure. Defendant asserts that the notice, insofar as it listed as unpaid and owing the rents due for August through December of 2024 and did not acknowledge that they were subject to the defense of claim preclusion, overstated the amount that Defendant needed to pay in order to cure her breach and maintain her tenancy. This supposed overstatement is defective, in Defendant's view, because she is left to speculate on the true amount that she must pay to cure her default. The Court does not agree.

First, Defendant is mistaken as to the landlord's duty regarding notices of termination. The landlord's duty requires that the "amount needed to cure," if stated, be stated accurately. But that does not include making downward adjustments to the amount needed to cure based on a landlord's prediction of the validity of a tenant's possible defense of claim preclusion. The landlord is not obligated to speculate or guess, when serving a pre-litigation notice to terminate for nonpayment of rent, whether a tenant will even assert such a defense during the new litigation, much less the outcome of the court's ruling on that defense, if it is brought. The law does not compel a landlord to foresee and accurately determine, and then essentially confess to the tenant, the validity of an as-yet unpled and unproven affirmative defense. Putting aside the question whether Defendant's affirmative defense of claim preclusion may have merit here, the landlord has no such obligation in crafting a notice of termination.

Moreover, all things considered, Plaintiff's notice to terminate did not put Defendant in a position of confusion or speculation as to what amount of rent she needed to pay in order to cure. After all, Defendant alone controls whether she will assert the affirmative defense that, if granted by the Court, would operate to bar Plaintiff from litigating claims as to some months' worth of unpaid rent. Defendant's claimed confusion or uncertainty as to her obligations regarding these particular months of unpaid rent does not come from anything that Plaintiff stated is mis-stated in the notice to terminate. Her uncertainty is really no different than that experienced by any defendant engaged in litigation, who may wonder how a court might rule on a particular affirmative defense or other theory of avoidance.

Turning to the other pending motions—Plaintiff's motion to amend will be granted, and Defendant's Rule 12(f) motion to strike will be denied. Plaintiff's motion to amend is unopposed. The record shows that Defendant accepted personal service of the motion on October 29, 2025, and no opposition has been filed. The motion also appears to have been filed prior to the filing of any responsive pleading filed by Defendant (as to the Plaintiff's original complaint), and Rule 15(a) of the Vermont Rules of Civil Procedure expressly provides that a party may amend its pleading once as a matter of course if the amendment is sought before a responsive pleading has been served. Thus, the motion is granted by operation of Rule 15(a).

Defendant's Rule 12(f) motion seeks to strike Plaintiff's claim for no-cause termination, on grounds that the claim had been filed prior to the effective date of termination (October 17, 2025). Defendant could not have been a holdover tenant, or in wrongful possession, unless and until Defendant remained in the premises after it had been terminated by proper notice. Plaintiff's amended complaint now properly alleges that Defendants have remained in the premises after the termination date. As such, the motion to strike is now without merit.

Wherefore, Defendant's motion to dismiss and motion to strike are both DENIED. Plaintiff's motion to amend is GRANTED.

Electronically Signed on: Wednesday, December 24, 2025 pursuant to V.R.E.F. 9(d).

_____
Susan A. McManus
Superior Court Judge